329 So.2d 885 (1976)
4626 CORPORATION
v.
Mike MERRIAM.
No. 10638.
Court of Appeal of Louisiana, First Circuit.
March 1, 1976.
Rehearing Denied April 12, 1976.
Writ Refused June 4, 1976.
*886 E. Drew McKinnis, Baton Rouge, for appellant.
Gregory B. Adams, Baton Rouge, for appellee.
*887 Before ELLIS, BLANCHE and LOTTINGER, JJ.
BLANCHE, Judge.
This is an action by plaintiff, 4626 Corporation, the owner and developer of Concord Park, a commercial subdivision located in the Parish of East Baton Rouge at the intersection of Interstate Highway 10 and College Drive, against defendant, Mike Merriam, the owner of Lot 14 of Concord Park, seeking to enjoin Merriam's violation of certain subdivision restrictions.
The trial court found for the plaintiff, permanently restraining, enjoining and prohibiting the defendant from "continued violation of the subdivision restrictions of record affecting Lot 14, Concord Park, by maintaining a sign on Lot 14 which has not been approved by the Architectural Control Committee." Defendant was cast with all costs of the proceedings. Both defendant and plaintiff have appealed.
The restrictions involved in this litigation, in pertinent part, provide:
"9) All exterior signs shall be approved by the Architectural Control Committee. Flashing neon, yard signs or general outdoor advertising signs are prohibited.
"10) An Architectural Control Committee composed of James D. Dodds, Chairman, Frank J. Vicari and John C. Moore are hereby appointed. A majority of the committe may designate a representative to act for it. In the event of death or resignation of any member of the committee, the remaining members shall have full authority to designate a successor. Neither the members of the committee nor its designated representative shall be entitled to any compensation for services performed pursuant to this covenant. In addition, the decision of the Architectural Control Committee in the event of any dispute or controversy involving the interpretation of these restrictions shall be final and non-appealable.
"11) The committee's approval or disapproval as required in these covenants shall be in writing. In the event the committee, or its designated representative, fails to approve or disapprove, within thirty (30) days after plans and specifications (preliminary or construction) have been submitted to it, in writing, or in any event, if no suit to enjoin the construction has been commenced prior to the completion thereof, approval will not be required and the relative covenants shall be deemed to have been fully complied with." (Record, pp. 11, 12)
The facts giving rise to the instant suit are as follows: Mike Merriam is the owner and operator of "Del Lago," a restaurant and nightclub situated entirely on Lot 14 of Concord Park Subdivision. The master plan for the subdivision envisions a total of 130 lots. At the date of trial twenty-five lots had been sold, thirteen of which had been developed.
At issue is the neon sign for Merriam's establishment which advertises pertinent aspects of the business and also carries the name "Del Lago." The free-standing sign is located on the northeast corner of Lot 14 and is raised by a single metal pole to a point where its top is approximately ten to fifteen feet above the roofline of the building. There is another sign attached to the front wall of the building, but it is not at issue herein.
James D. Dodds, chairman of the architectural control committee for the subdivision, testified that several complaints were received from other lot owners in the subdivision concerning the height of the described sign which is clearly visible from Interstate 10. Dodds noted that Merriam had not submitted the drawings and specifications of the sign to the committee for their approval prior to its erection, even though they had made written request upon him to do so.
The committee agreed with the complaining lot owners that the sign was improper, *888 and on November 27, 1973, the committee wrote a letter to Merriam requesting that Merriam meet with them for the purpose of working out a compromise so that Merriam could salvage part of his investment in the sign. The letter stated that if no compromise were reached, the sign would have to be removed.
The evidence established that the construction of the sign had taken two weeks and that the sign was several months old before the committee notified defendant that there was a problem.
Merriam failed to meet with the committee, and subsequently on January 21, 1974, and again on April 29, 1974, the committee made written demand upon Merriam to remove the sign. Merriam failed to do so and the instant suit ensued. The suit also demanded removal of a temporary advertising sign, which defendant accomplished prior to trial.
Therefore, the only question on this appeal is the status of the free-standing, permanent sign.
At both the trial of this matter and on appeal, the defendant argues that the subdivision restrictions had been waived or abandoned by repeated violations. While acknowledging that some violations had occurred, the trial judge stated in his Written Reasons for Judgment that those violations were not of such a number or character as to result in a waiver or abandonment of the total plan, citing in support thereof Melrose Civic Association v. Universal Builders, Inc., 289 So.2d 521 (La.App.1st Cir. 1973), writ refused, 293 So.2d 167 (La.1974).
In this regard, of the ten permanent signs standing in Concord Park at the time of trial, eight had been submitted for prior approval of the committee. One of the two that had not been submitted for prior approval was the sign on the office of Dodd's, Vicari and Moore, Architects, who are the sole members of the architectural control committee. Obviously, they would not be required to submit their own sign to themselves for approval. The other sign erected without prior approval was the defendant's.
It was also shown that the architectural control committee was actively enforcing the subdivision restrictions regarding signs and in one instance required a restaurant located in the subdivision to lower its sign approximately ten feet. It is, therefore, obvious from the record that even though the committee held no regular meetings, nor kept minutes of their activities, it was, in fact, enforcing the subdivision restrictions as authorized.
In addition to the foregoing, a great percentage of the purported violations cited by the defendant involved signs of a temporary nature such as those advertising office space for sale or lease, and said signs were of an entirely different character than the permanent, free-standing sign which is sought to be enjoined herein.
In both law and fact, the record fully supports the trial judge's conclusion that no waiver or abandonment of the subdivision restrictions with regard to outdoor signs had taken place in the instant case, and that holding will not be disturbed on appeal. Canter v. Koehring Company, 283 So.2d 716 (La.1973).
The defendant's next contention is that the subdivision restrictions regarding exterior signs are unenforceable since they contain no guidelines or standards to be followed by the architectural committee.
The restrictions' only reference to signs is contained in paragraph 9 quoted above which requires that all exterior signs must be approved by the committee. As pointed out by defendant, there are no guidelines to guide the committee in the exercise of its authority.
*889 Since the subdivision's founders did not choose to limit the power of the committee by setting forth guidelines or standards, the inference is that the validity of the committee's enforcement of the restrictions must be judged by the reasonableness of its actions.
When judging the reasonableness of the committee's actions, we must look to the purpose behind imposing said restrictions upon the property.
Building restrictions are a means of insuring the lasting aesthetic and monetary value of property. They involve a scheme or plan of which all prospective purchasers are aware, since to be effective building restrictions must be entered into the public records. The owner purchases the land burdened with the restrictions. However, the owner knows that by necessity not every contingency that may occur can be anticipated or controlled in the restrictions. He also knows that as a practical matter every standard by which the restrictions would be enforced could not be incorporated therein.
Without creating definite guidelines or standards, the founders of Concord Place Subdivision chose to allow an architectural committee composed of three architects establish a plan or scheme concerning exterior signs.
Concerning the instant sign, the committee chairman testified that the excessive height of the sign was the reason for its rejection. The trial judge found height to be a reasonable criterion upon which to reject the sign. He also noted that the subject sign was the only subdivision sign facing Interstate 10 that was higher than the roofline of the building it advertised.
The trial judge's observations are fully supported by the record and we conclude, as did he, that height is a reasonable standard by which the committee could enforce the subdivision plan.
We are, therefore, of the opinion that albeit absent guidelines or standards in the restrictions, the committee's demand upon defendant to remove the subject sign is enforceable since it was based upon reasonable criteria and was not in opposition to the total plan of the subdivision.
The trial judge properly disposed of defendant's third specification of error as follows:
"Another ground asserted for making the restriction inoperative is the clause `___ in any event, if no suit to enjoin the construction has been commenced prior to the completion thereof, approval will not be required ___.' Certainly, no suit was filed before the sign was completed. However, [if] by the exact wording, this provision could be applied to signs, the application thereto would render the enforcement of the provision impossible since a sign could be installed before being noticed and certainly before a suit could be prepared and filed. A more reasonable interpretation would be that this provision applies only to buildings or structures requiring extended times for erection." (Written Reasons for Judgment, Record, pp. 35, 36)
The last issue on this appeal was prompted by the trial judge's written reasons denying defendant's motion for a new trial. Therein the judge asserted that according to the original judgment granting the injunctive relief to plaintiff, the defendant was required to seek the committee's approval of the sign. Both parties appeal this portion of the judgment, pointing out that the committee has already disapproved of the sign.
Under the facts and circumstances of this case, we agree with both parties' contention that to require the defendant to *890 submit the sign for approval would be a vain and useless thing. The committee is unequivocally opposed to the height of the sign.
As we have determined that the committee's refusal to approve the sign was valid and enforceable, plaintiff is entitled to a judgment enforcing the committee's action.
Plaintiff's petition prayed for complete removal of the sign. However, the record establishes that there are no questions concerning the sign's overall quality. The only defect complained of by the committee is its height.
Therefore, under the authority vested in this court by LSA-C.C.P. Art. 2164[1] the judgment of the trial court is amended to order defendant, Mike Merriam, to adjust the height of the complained of sign located on the northeast corner of Lot 14, Concord Park Subdivision, to conform to the standards of the subdivision's architectural control committee with regard to height, that is, to lower said sign so that its uppermost limit does not extend higher than the roofline of the building it advertises. Defendant is allowed thirty days from the date this judgment becomes final in which to accomplish same. If such adjustment is not accomplished by defendant within the allotted time, it is further ordered, adjudged and decreed that defendant, Mike Merriam, be permanently restrained, enjoined and prohibited from maintaining said sign on Lot 14, Concord Park Subdivision.
In all other respects, the judgment of the trial court is affirmed.
All costs of this appeal are to be borne by defendant, Mike Merriam.
AMENDED AND AS AMENDED, AFFIRMED.
NOTES
[1] LSA-C.C.P. Art. 2164, in pertinent part, provides:

"The appellate court shall render any judgment which is just, legal, and proper upon the record on appeal. * * *"