STONE, J.
*755 The trial court rendered a judgment permanently enjoining Landry Chalet Rentals, LLC, from operating a business on its property because it violated the subdivision's restrictive covenants prohibiting use of the property for commercial purposes. Landry Chalet Rentals, LLC, appeals. For the following reasons, we affirm.
FACTS AND PROCEDURAL BACKGROUND
On March 12, 2015, Landry Chalet Rentals, LLC ("Landry Rentals"), purchased Lot 10 of Timber Point Subdivision located on Caney Lake in Jackson Parish, Louisiana ("Timber Point"). On September 14, 2016, fourteen Timber Point property owners ("the property owners") filed suit seeking a preliminary and permanent injunction prohibiting Landry Rentals from operating a "commercial enterprise" on Lot 10, including using a single-family dwelling on the property as a vacation rental. The property owners asserted Landry Rentals' operations on Lot 10 violated a restrictive covenant governing Timber Point which provides that "[n]o lot shall be used for any commercial purposes[.]"
A hearing on the matter was held on April 6, 2017. The parties agreed to submit joint stipulations to be considered by the trial court in lieu of an evidentiary hearing. All parties stipulated to the introduction of the following exhibits:
1. The deed by which Landry Rentals acquired Lot 10 of Timber Point ("Exhibit 1");
2. The restrictive covenants of Timber Point, recorded on July 14, 1983, in the conveyance records of Jackson Parish ("Exhibit 2");
3. The plat for Timber Point ("Exhibit 3");
4. A vacation rental website advertisement for the rental of Landry Rentals' dwelling in Timber Point ("Exhibit 4"); and
5. The declaration page of the commercial insurance policy for Landry Rentals' property ("Exhibit 5").
The following verbal stipulations were introduced as well:
1. Landry Rentals "leases Lot 10 for not less than periods of two nights and has rented it on one, possibly two occasions, for a maximum period of one month since its ownership began in July of 2015."
2. During the time Landry Rentals began leasing the premises in July of 2015, "in that year it rented the property to approximately [23] different renters for approximately [104] days and received income of approximately $30,990.18 and during the 2016 calendar year [Landry Rentals] rented the property for approximately [59] nights to approximately [20] different renters for gross revenues of approximately $22,666.53...during the rest of the time the property was not rented during 2015 and 2016[,] it was occupied *756 by either friends, family or vacant."
3. "If [the property owners] were called to testify in this matter regarding the allegations of nuisance and annoyance, they would testify jointly or individually that [Landry Rentals'] tenants have engaged in trespassing upon neighboring lots, use of piers adjacent to [Landry Rentals'] premises without permission of the owners and caused congested traffic conditions in the area." They would also testify that Landry Rentals' tenants "have caused an increase in dangerous boating activity near neighboring docks, created unnecessary litter and trash in the neighborhood, left boat trailers and vehicles unattended on lawns of property owners with adjacent premises."
After taking the matter under advisement, the trial court issued written reasons for judgment. The trial court concluded Landry Rentals was a commercial business entity operating a vacation rental business out of a dwelling on Lot 10 in violation of Timber Point's restrictive covenants. On June 13, 2017, the trial court rendered judgment permanently enjoining Landry Rentals from operating a business from the dwelling located on its property. Landry Rentals now appeals.
DISCUSSION
The restrictive covenants governing Timber Point are enumerated in "Restrictions for Timber Point Subdivision" ("the Timber Point Covenants"), which was filed in the conveyance records of Jackson Parish on July 14, 1983. The Timber Point Covenants provide in pertinent part:
Section 1. Land Use and Building Type. No lot shall be used except for residential purposes. No lot shall be used for any commercial purposes, including bait stands, sale of beverages, etc . No resident building shall be erected, altered, placed or permitted to remain on any lot other than one new detached single-family dwelling and a private garage. No lot shall be used for raising livestock. No old, used or second-hand house or other structure shall be moved or placed on any lot subject to these restrictions. No mobile home, modular homes, trailer houses, or travel homes will be utilized for residential purposes. [Emphasis added.]
The question presented to this court is whether the trial court erred in its factual finding that Landry Rentals used its dwelling on Lot 10 for commercial purposes in violation of the Timber Point Covenants. Landry Rentals contends using the dwelling as a vacation rental is not a commercial purpose because it is only leasing the dwelling for residential use. In support of its argument, Landry Rentals points to the illustrative examples of prohibited "commercial purposes" cited in the Timber Point Covenants, i.e. bait stands and sale of beverages. Landry Rentals contends the inclusion of these illustrative examples indicates the prohibition against using its property for "commercial purposes" means it may not engage in the buying, selling, or exchanging of products on the property.
Landry Rentals also relies upon Section 7 of the Timber Point Covenants which provides that "[n]o commercial signs of any kind shall be displayed to the public view on any lot except one professional sign...advertising the property for sale or rent, or signs used by a builder or realtor to advertise the property." According to Landry Rentals, prohibiting it to lease the dwelling for any duration would render Section 7's allowance of signs "advertising the property...for rent" meaningless.
*757 Building restrictions are governed by Louisiana Civil Code articles 775 through 783. Building restrictions are charges imposed by the owner of an immovable in pursuance of a general plan governing building standards, specified uses and improvements. La. C.C. art. 775. Building restrictions are a means of insuring the lasting aesthetic and monetary value of property. Chambless v. Parker , 38,276 (La. App. 2 Cir. 03/03/04), 867 So.2d 974, 978 ; 4626 Corp. v. Merriam , 329 So.2d 885 (La. App. 1 Cir. 1976), writ ref'd , 332 So.2d 800 (La. 1976). Building restrictions are sui generis real rights which may be enforced by mandatory and prohibitory injunctions. La. C.C. art. 779 ; Honeycutt v. Brookings , 43,605 (La. App. 2 Cir. 10/01/08), 996 So.2d 553, 557. The standard of review for the issuance of a permanent injunction is the manifest error standard. Metro Ambulance Serv., Inc. v. Med Life Emergency Med. Servs., Inc., 39,440 (La. App. 2 Cir. 03/17/05), 900 So.2d 184, 188 ; Parish of Jefferson v. Lafreniere Park Found. , 98-146 (La. App. 5 Cir. 07/28/98), 716 So.2d 472, 478, writ denied , 1998-2598 (La. 1998), 723 So.2d 965.
Doubt as to the existence, validity, or extent of building restrictions is resolved in favor of the unrestricted use of the immovable. La. C.C. art 783. The words of a contract must be given their generally prevailing meaning. La. C.C. art. 2047. Words of art and technical terms must be given their technical meaning when the contract involves a technical matter. Id . Each provision in a contract must be interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole. La. C.C. art. 2050. A trial court's factual finding that certain conduct violates building restrictions is subject to manifest error review. Flippo v. Mann , 50,269 (La. App. 2 Cir. 01/13/16), 185 So.3d 856, 861-62, writ denied , 2016-0293 (La. 04/22/16), 191 So.3d 1047 ; Jackson Square Towne House Home Ass'n, Inc. v. Hannigan , 38,239 (La. App. 2 Cir. 03/03/04), 867 So.2d 960.
Our review of this limited record reveals a reasonable factual basis for the trial court to conclude that Landry Rentals was a commercial business entity operating a vacation rental business on its property in violation of the Timber Point Covenants' express prohibition against using the property for commercial purposes. In Chambless v. Parker , supra, landowners sought an injunction prohibiting the defendant from using his land to lease mobile homes for residential occupancy in violation of a restrictive covenant requiring the land be used for a "residential purpose only." This court found the trial court properly enjoined the defendant's for-profit activity on the land because it constituted "commercial use" in violation of the restrictive covenant.[1]
In the case sub judice , Landry Rentals, a limited liability company, purchased Lot 10 in Timber Point, which included a lakefront house with six bedrooms and five baths. Four months after purchasing the property, Landry Rentals began leasing the property for short-term durations of *758 not less than two nights. Landry Rentals advertised the property on a vacation rental website and insured the property with a commercial insurance policy from State Farm Fire and Casualty Company. The declaration page shows coverage for both "loss of rents" and "business liability" in addition to insuring the improvements. The occupants are in the property on a transient basis only and are not utilizing the property for residential purposes. Since July 2015, Landry Rentals has leased the property to 43 different occupants for approximately 4 nights on average. In 2015, Landry Rentals derived approximately $30,990.18 in income from 23 different occupants, and in 2016, approximately $22,666.53 in gross revenues from 20 different occupants.
The trial court reasonably concluded from the joint stipulations that Landry Rentals was utilizing Lot 10 for commercial purposes to make a profit. Black's Law Dictionary (West, 10th ed. 2014) defines "commercial" as "put up for trade," "commercial use" as "[a] use that is connected with or furthers an ongoing profit-making activity," and "commercial activity" as "[a]n activity, such as operating a business, conducted to make a profit." The trial court's ruling was limited to the narrow set of facts presented to it, and the trial court's factual conclusions were not manifestly erroneous.
CONCLUSION
For the foregoing reasons, the trial court's judgment permanently enjoining Landry Rentals from operating a business on its property is affirmed. Costs of this appeal are assessed to Landry Rentals.
AFFIRMED.

Landry Rentals has cited numerous cases arising in other jurisdiction wherein courts have ruled that vacation rentals by owners do not violate restrictive covenants prohibiting use of the property for commercial purposes. Notably, Landry Rentals maintains that a case out of the State of Washington is persuasive as it discusses the restriction pertaining to advertising one's property for rent. See Wilkinson v. Chiwawa Communities Ass'n , 180 Wash. 2d 241, 327 P.3d 614 (2014). We note that the Washington case arises in the context of a motion for summary judgment and the facts indicate there had been a pattern of property owners renting their property on a short-term basis for decades without controversy. Such is not the case in the instant matter.